UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDLAND STATE BANK, as Guardian of the Minor Children and Independent Administrator of the estate of JULIA CASTELLANOS, Deceased,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | No. 18 C 2775<br><br>Judge Valderrama |

**UNITED STATES'S SUPPLEMENTAL BRIEF
ON THE ADMISSIBILITY OF DR. DOWNS'S STANDARD-OF-CARE OPINIONS**

## Introduction

Dr. Downs, an anesthesiologist, is not qualified to opine about the standard of care applicable to Dr. Shaffer, an obstetrician gynecologist. The Seventh Circuit's recent decision in *Love v. United States*, --- F.4th ----, 2021 WL 5119342 (7th Cir. Nov. 4, 2021), supports the United States's position that Dr. Downs's opinions do not meet the admissibility requirements of Federal Rule of Evidence 702. *See* U.S. Mot., Dkt. 100, Ex. 5 at 1, 7-8, 11. In accordance with *Love* and Rule 702, the court should grant the United States's motion *in limine* and exclude Dr. Downs's opinion that Dr. Shaffer breached the standard of care.

## Background

In its motion *in limine*, the United States noted that Dr. Downs had conceded at his deposition that he could not testify regarding the standard of care for obstetrics and gynecology because he is not qualified in that field of practice. U.S. Mot., Dkt. 100, Ex. 5 at 11. The United States made this point in support of its broader argument that the only stated basis for Dr. Downs's

standard-of-care opinions was the notion that Dr. Shaffer was "the only attending physician in the operating room"—in essence, the impermissible "captain of the ship" theory. U.S. Mot., Dkt. 100, Ex. 5 at 11. As the United States explained, allowing Dr. Downs to offer standard-of-care opinions based only on an *ipse dixit* "captain of the ship" theory would allow an end-run around Rule 702's requirement that an expert must be qualified by "knowledge, skill, experience, training, or education." U.S. Mot., Dkt. 100, Ex. 5 at 7, 11. Thus, the United States argued, Dr. Downs's opinions should be excluded under Rule 702. U.S. Mot., Dkt. 100, Ex. 5 at 11.

In support of its argument, the United States cited Dr. Downs's deposition, where he testified as follows:

> Q: Okay. You are not a board certified OB/GYN, correct?
>
> A: Correct.
>
> Q: And you agree you're aware that the State of Illinois doesn't allow you to testify as to the standard of care applicable to OB/GYNs, correct?
>
> A: Correct.
>
> Q: Yet your report includes opinions, standard of care opinions, regarding an OB/GYN, correct?
>
> A: It probably does; I don't recall.
>
> Q: Well . . . If you look at the last sentence on the second paragraph, you write: Dr. Shaffer's failure to provide medical direction to the CRNA prior to the Code Blue being called at 8:40 pm was a departure from the standard of care.
>
> A: Yes.
>
> Q: Do you see that? Do you see that?
>
> A: I do. But the reason I stated that was because in this instance, since he was the only physician in the room, that could potentially put him in the category of being a non-anesthesiologist physician supervising a CRNA. Now, whether or not I'm permitted to state that in the State of Illinois, I don't know, because that would be a legal opinion and . . . not a medical opinion.

Downs Dep. 124:24-125:24; U.S. Mot., Dkt. 100, Ex. 5 at 11.

The United States also cited *Sullivan v. Edward Hospital*, 806 N.E.2d 645 (Ill. 2004), which sets forth the Illinois rule prohibiting a medical expert from providing expert opinions about a school of medicine in which he does not practice. As of the date of the United States's motion, there was no Seventh Circuit case addressing whether the Illinois rule is substantive (in which case it would apply in federal court under the *Erie* doctrine) or procedural (in which case it would not apply). Courts in this circuit, moreover, had analyzed the admissibility of expert testimony using the Illinois rule. *See, e.g.*, *Vargas v. United States*, No. 16 C 11012, 2020 WL 6894666, at *3 n.4 (N.D. Ill. Nov. 24, 2020) (noting that it was unclear whether the Illinois rule is considered procedural or substantive but applying the doctrine); *Lange v. Kaveney*, No. 07-632-DRH, 2008 WL 5111257 (S.D. Ill. Dec. 4, 2008) (barring podiatrist from offering opinions about the standard of care for orthopedic surgeons).

The estate did not object to the United States's reliance on *Sullivan*. Rather, the estate responded that Dr. Downs's opinions are not based on the "captain of the ship" theory and that instead Dr. Downs is opining that Dr. Shaffer committed "individual acts of negligence." Dkt. 101 at 27. In particular, the estate argued that in Dr. Downs's opinion, Dr. Shaffer breached the standard of care by: (i) "failing to have Osunero (the attending anesthesiologist) paged," (ii) "failing to investigate further when he could not determine why Julia's uterus was atonic," (iii) "failing to request specific vital signs from Kammann," and (iv) "failing to respond to alarms from the monitors." Dkt. 101 at 26-27.

Subsequently, in *Love*, the Seventh Circuit concluded that the Illinois rule set forth in *Sullivan* is procedural. 2021 WL 5119342, at *2-3. The Seventh Circuit applied Rule 702, rather than the Illinois rule, in considering whether the district court had properly allowed a urologist to opine about the standard of care applicable to a nurse practitioner. 2021 WL 5119342, at *2-3.

3

**Argument**

In light of the Seventh Circuit's ruling in *Love*, this court should apply Rule 702 in assessing the admissibility of Dr. Downs's standard of care opinions. *See* U.S. Mot., Dkt. 100, Ex. 5 at 7-8 (setting forth the legal standard under Rule 702 and *Daubert*). Irrespective of whether Dr. Downs's standard of care opinions are assessed under the Illinois rule or Rule 702, however, the result of the analysis is the same and requires exclusion.

As the court of appeals explained in *Love*, both Rule 702 and the Illinois rule are "designed to ensure that judges and juries rely on properly supported testimony." 2021 WL 5119342, at *3. Therefore, for example, under either rule, "a nurse practitioner could not testify . . . to the standard of care by a urologist; medical doctors have greater knowledge than nurses on matters within their specialties." *Id.* The bottom line, in both federal and Illinois state court, is that "medical professionals must stay within the scope of their expertise." *Id.*; *see also*, *e.g.*, *Hall v. Flannery*, 840 F.3d 922, 929-930 (7th Cir. 2016) (holding that it was plain error for district court to allow a pediatric neurosurgeon to opine that a cardiac issue was cause of death); *Dura Auto. Sys. of Indiana, Inc.*, 285 F.3d 609, 614 (7th Cir. 2002) ("Suppose a thoracic surgeon gave expert evidence in a medical malpractice case that the plaintiff's decedent had died because the defendant, a radiologist, had negligently failed to diagnose the decedent's lung cancer until it was too advanced for surgery. . . . [H]e would be, at best, just parroting the opinion of an expert in radiology competent to testify that the defendant had x-rayed the decedent carelessly.").

Here, Dr. Downs does not have the "knowledge, skill, experience, training, or education" to offer opinions about the standard of care for an obstetrician-gynecologist because the duties of an obstetrician-gynecologist are outside the scope of his expertise. U.S. Mot., Dkt. 100, Ex. 5 at 7, 11-12; Fed. R. Evid. 702. According to the estate, Dr. Downs, an anesthesiologist, should be

4

permitted to offer opinions about: how an obstetrician-gynecologist should respond to an atonic uterus, how an obstetrician-gynecologist should monitor a patient's vital signs while performing a C-section, how an obstetrician-gynecologist should respond to anesthesia alarms in the operating room (if they were heard), and how an obstetrician-gynecologist is required to page the anesthesia attending. Dkt. 101 at 27. In essence, Dr. Downs, an anesthesiologist, wants to tell the court how an obstetrician should perform various tasks involved in emergency C-section surgery. Dr. Downs, however, is not licensed in the field of obstetrics and gynecology and does not practice in that field. He is not a surgeon, and does not perform C-sections. Nothing remotely qualifies Dr. Downs, an *anesthesiologist*, to opine on what a "reasonably well-qualified" *obstetrician-gynecologist* "would bring to a similar case." *Willbourn v. Cavalenes*, 923 N.E.2d 937, 953 (Ill. App. Ct. 2010) (defining the standard of care under Illinois law).

Even apart from this lack of training and experience performing emergency C-section surgery, Dr. Downs's practice as an anesthesiologist does not have any bearing on the situation presented in this case, where there was only one physician, the obstetrician-gynecologist, in the operating room. Dr. Downs's C-section experience by definition must have involved at least *two* physicians in the operating room (an obstetrician-gynecologist, and Dr. Downs). Thus, to the extent Dr. Downs is offering his standard of care opinions from a so-called "anesthetic standpoint," Downs Dep. 136:18-137:8, he still cannot be considered qualified because Dr. Downs's experience obviously does not encompass situations when the anesthesiologist (i.e., Dr. Downs) is *absent* from the OR.

Finally, Dr. Downs is not an attorney or an expert competent to provide opinions based on the Illinois statutes that, according to Dr. Downs, "potentially put [Dr. Shaffer] in the category of being a non-anesthesiologist physician supervising a CRNA." Downs Dep. 125:18-24. As Dr.

5

Downs testified at his deposition, his "understanding" is that the Illinois statutes required Dr. Shaffer to "supervise" CRNA Kammann but that "[i]f this statute doesn't apply, then that would be up to you to show that it doesn't apply. And . . . I don't have the expertise in Illinois law to argue with you about it." Downs Dep. 134:12-18; *see also* U.S. Mot., Dkt. 100, Ex. 5 at 5. Exactly. As the United States argued in its motion, Dr. Downs is concededly not qualified to opine on the meaning of the Illinois statutes and his legal opinions have no relevance in this federal bench trial. Thus, under Rule 702, Dr. Downs is not qualified to opine on the standard of care for obstetrics and gynecology and his opinions about Dr. Shaffer's alleged breaches of the standard of care should be excluded.

## Conclusion

For the foregoing reasons, the court should exclude Dr. Downs's opinion that Dr. Shaffer breached the standard of care.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Virginia O. Hancock
    VIRGINIA O. HANCOCK
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1998
    virginia.hancock@usdoj.gov